Robert BUCKHALTER,
Plaintiff-Appellant,

v.

PEPSI–COLA GENERAL BOTTLERS, INC., Roger Thomas Kiekhofer, & Robert Friend, Defendants-Appellees.

No. 84–2559.

United States Court of Appeals,
Seventh Circuit.

Argued April 23, 1985.

Decided July 18, 1985.

Rehearing and Rehearing In Banc
Denied Sept. 27, 1985.

Irene L. Hill, E.E.O.C., Washington, D.C., Robert Morris (Law Student), for plaintiff-appellant.

William R. Sullivan, Jr., Seyfarth Shaw Fairweather & Geraldson, Chicago, Ill., for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and GRAY, Senior District Judge.[*]

COFFEY, Circuit Judge.

The plaintiff, Robert Buckhalter, appeals the ruling of the United States District Court for the Northern District of Illinois that his claims of race discrimination in violation of Title VII, 42 U.S.C. § 2000e–2(a) (1982), and 42 U.S.C. § 1981 (1982) are barred by the doctrine of *res judicata*. We affirm.

I

The record reveals that the defendant, Pepsi-Cola General Bottlers, Inc. ("Pepsi-Cola"), hired the plaintiff, Robert Buckhalter, in September 1975, as a production line employee at its 51st Street plant in Chicago, Illinois. On June 10, 1978, Pepsi-Cola discharged Buckhalter, a black male, for violating Rule of Conduct IV–11, which prohibits employees from possessing alcoholic beverages or drugs on company property. Some two days thereafter, on June 12, 1978, Pepsi-Cola also discharged David Lynch, a white male, and James Ault, a white male, for violating Rule of Conduct IV–11. Buckhalter, Lynch, and Ault each filed grievances through their union representative and a grievance hearing was held for each employee pursuant to the terms of the collective bargaining agreement between Pepsi-Cola and Teamsters Local 744. Following the presentation of evidence at the grievance hearings, the Industrial Relations Manager upheld the discharge of Buckhalter and Lynch but reinstated Ault, finding that the employer failed to introduce sufficient evidence to establish that Ault had, in fact, violated the company rule. *See In re Buckhalter and Pepsi-Cola General Bottlers, Inc.*, 7 Ill.H.R.C. Rep. 96, 103–07 (1982) ("*In re Buckhalter*"). Buckhalter appealed the decision of the Industrial Relations Manager to the Labor Management Committee, consisting of three union representatives and three representatives from the Association of Chicago Bottlers of Carbonated Beverages, and they, likewise, upheld Buckhalter's discharge.

In August 1978, Buckhalter filed a charge with the Illinois Fair Employment Practice Commission ("FEPC"), alleging that Pepsi-Cola had engaged in race discrimination because it reinstated Ault, a white employee, but did not reinstate Buckhalter, a black employee. The FEPC conducted an investigation into the discharge incident and in March 1979, found a lack of substantial evidence to support Buckhalter's claim. Buckhalter requested that the FEPC reconsider its decision and on May 29, 1979, the FEPC reversed its prior determination and issued a complaint of race discrimination in violation of section 3(a) of the Illinois Fair Employment Practices Act, Ill.Rev.Stat. ch. 48, ¶ 853 (1978), which provided in pertinent part that:

"It is an unfair employment practice: (a) For any employer, because of the race, color, religion, national origin or ancestry of an individual to refuse to hire, to segregate, or otherwise to discriminate against such individual with respect to hire, selection and training for apprenticeship in any trade or craft, tenure, terms or conditions of employment...."[1]

* The Honorable William P. Gray, Senior District Judge of the Central District of California, is sitting by designation.

1. In July 1980, the Illinois legislature repealed the Fair Employment Practices Act, Ill.Rev.Stat. ch. 48, § 851 *et seq.*, replacing it with the Illinois

In accord with the provisions of Illinois law, the FEPC assigned Buckhalter's race discrimination complaint to Chief Administrative Law Judge Patricia Patton, who conducted an adjudicatory hearing of four days in length, in March 1980. Buckhalter and Pepsi-Cola, who were each represented by counsel, engaged in extensive pre-hearing discovery and submitted exhaustive legal memoranda in support of their respective positions. At the hearing, the parties examined and cross-examined witnesses in accord with the applicable Illinois Rules of Evidence. The parties introduced some ninety exhibits and documents including statistical data of the patterns and racial breakdowns of Pepsi-Cola's employee discharges. In addition, the parties made opening and closing statements to the Administrative Law Judge ("ALJ") and argued numerous evidentiary issues. At the close of the four-day adversarial proceeding, the testimony was compiled in five volumes of transcripts totaling 680 pages in length.

In July 1980, the Illinois legislature replaced the FEPC with the Illinois Human Rights Commission ("Commission" or "HRC"). See Ill.Rev.Stat. ch. 68, ¶ 1-101 et seq. (1983). The investigatory and adjudicatory powers of the HRC are identical to those of the FEPC but under the new law, the Illinois Department of Human Rights ("Department") conducts all investigations and the Commission conducts all adjudicatory hearings. The Illinois law provides that the Department of Human Rights is "[t]o issue, receive, investigate, conciliate, settle, and dismiss charges...." Ill.Rev. Stat. ch. 68, ¶ 7-101(B). According to the law, a complainant may file a written charge with the Department within 180 days after the occurrence of an alleged civil rights violation. The Department notifies the respondent of the filing of the written charge within ten days and subsequently conducts an investigation of the alleged discriminatory practice. If the Department determines that substantial evidence of a civil rights violation exists, it

initially attempts to remedy the situation through a conciliation conference with the respondent. If no agreement can be reached, the Department files a complaint with the HRC. See Ill.Rev.Stat. ch. 68, ¶ 7-102(F).

The HRC is a body composed of nine members, appointed by the Governor of Illinois, that is authorized "to hear and decide by majority vote requests for review and complaints filed...." Ill.Rev.Stat. ch. 68, ¶ 8-102. Within five days after a complaint is filed by the Department, the HRC serves a copy of the complaint upon the respondent and notifies the parties of a scheduled adjudicatory hearing. The complainant and respondent may appear at the hearing with counsel to examine and cross-examine witnesses. The parties are afforded compulsory process "to compel the attendance of a witness or to require the production for examination of any relevant books, records or documents whatsoever." Ill.Rev.Stat. ch. 68, ¶ 8-104(C). The testimony taken at the hearing must be under oath or affirmation and a transcript of the entire proceeding must be compiled and filed with the HRC. Moreover the testimony elicited at the hearing "is subject to the same rules of evidence that apply in courts of [the State of Illinois] in civil cases." Ill.Rev.Stat. ch. 68, ¶ 8-106(E). The ALJ issues written findings of fact, reviews the evidence presented, and recommends that the Commission either affirm, modify, or dismiss the claim of employment discrimination. The ALJ submits the findings of fact and recommendations to a three-member panel of the HRC which considers the evidence along with the oral argument presentations of the complainant and respondent. The HRC may then "adopt, modify or reverse in whole or in part the findings and recommendations of the hearing officer." Ill.Rev.Stat. ch. 68, ¶ 8-107(E)(1). The law of Illinois requires that the HRC adopt the ALJ's findings of fact unless they are "contrary to the manifest weight of the evidence." Ill.Rev.Stat. ch. 68, ¶ 8-107(E)(2). The HRC issues a written

Human Rights Act, Ill.Rev.Stat. ch. 68, ¶ 1-101(A) et seq. (1983).

order and decision that is published in the Illinois Human Rights Commission Reporter "to assure a consistent source of precedent." Ill.Rev.Stat. ch. 68, ¶ 8–110. If either the complainant or respondent want to contest the HRC decision, they may file an application for rehearing and if granted the case is reheard by the entire nine-member Commission. Moreover, the parties are at all times entitled to appeal the HRC decision and obtain additional judicial review in the Illinois Circuit Court system pursuant to the Illinois Administrative Review Act. *See* Ill.Rev.Stat. ch. 110, ¶ 3–101 *et seq.* On appeal, the Illinois Circuit Court's standard of review is that "the Commission's findings of fact shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." Ill.Rev.Stat. ch. 68, ¶ 8–111(A)(2).

In March 1982, the ALJ issued her findings of fact and conclusions of law that were published, in compliance with Illinois law, in the Illinois Human Rights Commission Reporter. *See In re Buckhalter,* 7 Ill.H.R.C.Rep. at 102–15. The ALJ acknowledged that she conducted "a rather lengthy hearing in this matter" and that "despite all of complainant's detailed testimony on the events of the night in question, I have no reason to believe that Robert Buckhalter's discharge came about as a result of an indiscriminate imposition of discipline upon black employees." *Id.* at 108–09. In a detailed legal analysis of Buckhalter's claim, the ALJ initially recited that under the law of Illinois, a *prima facie* case of race discrimination "may be established by Complainant's showing that (1) he belongs to a racial minority, (2) that he was treated in a particular way by Respondent and (3) that similarly situated whites were not treated in the same manner." *Id.* at 109 (quoting *L.Q. Hampton, and National Banking Co.,* 3 Ill.F.E.P. Rep. 40, 42 (1976)). The respondent must then "come forth with a legitimate non-discriminatory reason for the difference in treatment...." *Id.* at 110. The ALJ ruled that Pepsi-Cola had established a legitimate, non-discriminatory reason "primarily because of the treatment afforded Daniel Lynch, a white employee discharged on Rule IV–11 grounds 2 days after [Buckhalter]." *Id.* According to the ALJ, "I find it quite difficult to infer that the difference in treatment between Robert Buckhalter and James Ault was based upon race when I am faced with the fact that Daniel Lynch, a white man, received the same treatment as Robert Buckhalter...." *Id.* at 111. Buckhalter attempted to establish that Pepsi-Cola's legitimate, non-discriminatory reason for the discharge was merely pretextual by introducing statistical data of the patterns and racial breakdown of Pepsi-Cola's employee discharges. Pepsi-Cola countered with its own statistical data and the judge ruled that "[t]he comparative data relating to the ... decisions to discharge both white and black employees at the plant in question is too inconsistent to be of probative value." *Id.* at 108. Thus, the ALJ concluded that Buckhalter's evidence was insufficient "to show respondent's given reasons to be pretextual." *Id.* at 114. According to the ALJ, "I have no other basis than the complainant's opinion upon which to conclude that the decision was made on the basis of race." *Id.* at 113. As a result, the ALJ held that Pepsi-Cola "was not guilty of disparate treatment on the grounds of race when it refused to reverse its decision to discharge Robert Buckhalter, and respondent, therefore, did not act in violation of Section 3(a) of the [Fair Employment Practices] Act in refusing to do so." *Id.* at 107.

In November 1982, a three-member panel of the Commission affirmed the ALJ's decision on the basis that "the facts contained in the administrative record are not against the manifest weight of the evidence...." *Id.* at 98. The Commission ruled that:

"[t]he evidence concerning the treatment of Lynch was particularly significant because his discharge occurred in circumstances virtually identical to those involving the complainant. Both Lynch and the complainant were observed drinking on Company property by respondent's Security Manager. Both were fired for violating the same company rule. Both

discharges were upheld after separate grievance hearings. Complainant and Lynch were thus similarly situated. The case involving Mr. Ault, on the other-hand [sic], was quite different from the situations involving complainant and Lynch and the Administrative Law Judge was correct in recognizing this dissimilarity."

*Id.* The Commission further reasoned that Pepsi-Cola "had a valid non-discriminatory reason—doubt as to the sufficiency of its case against Ault—for reinstating Ault but not complainant or Lynch." *Id.* at 99. In response to Buckhalter's claim that he was denied an opportunity to take depositions, the Commission ruled that "[w]e do not believe that the Chief Administrative Law Judge abused her discretion in denying leave to take depositions as there were other means available to complainant to effectuate discovery." *Id.* Thus, the Commission ordered that "the complaint in this matter be dismissed." *Id.* at 101.

Following the HRC decision, Buckhalter requested a right-to-sue letter from the Equal Employment Opportunity Commission ("EEOC"), rather than obtaining judicial review of the decision in the Circuit Court of Cook County pursuant to the Illinois Administrative Review Act. Buckhalter's legal counsel sent a letter to Pepsi-Cola stating that "in light of the United States Supreme Court decision in *Kremer v. Chemical Construction Corporation,* [*456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) ("Kremer")*], Complainant will pursue his remedies under Title VII of the Civil Rights Act of 1964...." Buckhalter relied upon the Supreme Court's language in footnote 7 of the *Kremer* opinion that, "[s]ince it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own court." 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. The EEOC issued a right-to-sue letter on March 7, 1983, and a month-and-a-half later, on May 22, 1983, Buckhalter

filed a separate lawsuit in Federal court alleging race discrimination in violation of Title VII, 42 U.S.C. § 2000e–2(a), and 42 U.S.C. § 1981. Buckhalter alleged the same underlying facts and circumstances that he had previously presented, unsuccessfully, to the Illinois Human Rights Commission, in an attempt to support his claim that "PEPSI–COLA GENERAL BOTTLERS, INC., intentionally discriminated against Plaintiff on the basis of his race and color, black, with respect to the conditions and privileges of his employment and by discharging plaintiff from employment and not reinstating plaintiff...." Pepsi-Cola responded to Buckhalter's complaint by filing a motion for summary judgment, claiming that Buckhalter had an opportunity to fully litigate his claim before the HRC and the Illinois state courts, and was thus barred from relitigating the same claim in Federal court under the principle of *res judicata.* Buckhalter argued that under footnote 7 of the *Kremer* opinion he was entitled to a *de novo* review of his claim in Federal court because the HRC decision constituted an unreviewed administrative determination by a state agency.

The district court ruled that "the footnote [in *Kremer* ] must be read as applying only to those administrative decisions which are investigatory or otherwise purely administrative in nature and not to determinations in which the administrative agency was empowered to and indeed acted in a judicial capacity." *Buckhalter v. Pepsi-Cola Gen. Bottlers,* 590 F.Supp. 1146, 1149 (N.D.Ill.1984). The court concluded that because "the HRC acted in its judicial capacity" and Buckhalter "was afforded sufficient due process in the litigation of his administrative claim," the Title VII claim was barred by *res judicata. Id.* at 1150. The court further reasoned that "because there is 'no reason to distinguish civil rights actions brought under section[ ] 1981 ... from suits brought under Title VII for purposes of applying *res judicata'* " Buckhalter's section 1981 claim was also barred. *Id.* (quoting *Lee v. City of Peoria,* 685 F.2d 196, 199 (7th Cir.1982). Thus, the district

court granted Pepsi-Cola's motion for summary judgment. On appeal, Buckhalter claims that the district court judge failed to adhere to the Supreme Court's direction in footnote 7 of the *Kremer* decision to allow a trial *de novo* in Federal court for "unreviewed administrative determinations by state agencies...." 456 U.S. at 470, 102 S.Ct. at 1891.

## II

We begin our analysis with a review of the Supreme Court's decision in *Kremer*, where the plaintiff, Reuben Kremer, alleged that his employer, Chemical Construction Corp., discharged and refused to rehire him due to his national origin and Jewish faith. Kremer filed a charge of national origin discrimination with the EEOC, which referred the claim to the New York State Division of Human Rights ("NYHRD").[2] Following a thorough investigation of Kremer's complaint, the NYHRD concluded that the evidence failed to establish probable cause to believe that the employer engaged in national origin discrimination. Kremer appealed to the NYHRD Appeals Board which affirmed the agency's investigative determination as "not arbitrary, capricious or an abuse of discretion." *Kremer*, 456 U.S. at 464, 102 S.Ct. at 1888. Pursuant to New York law, Kremer filed a petition with the Appellate Division of the Supreme Court of New York to review the Appeals Board decision and, at the same time, he filed his charge of employment discrimination a second time with the EEOC. The New York state court unanimously "confirmed" the Appeals Board decision and, in the separate Federal action, the EEOC ruled that the record was insufficient to establish reasonable cause to believe that Kremer's employer engaged in national origin discrimination. Nevertheless, the EEOC issued a routine right-to-sue letter and Kremer filed a Title VII employment discrimination lawsuit in the United States District Court for the Southern District of New York.

The district court granted the employer's motion to dismiss the Title VII claim on the basis that "res judicata would bar a Title VII claim where the plaintiff had previously sought state court review on the same question presented to the federal courts." *Kremer v. Chemical Const. Corp.*, 477 F.Supp. 587, 590 (S.D.N.Y.1979). The Second Circuit affirmed the dismissal of Kremer's Title VII claim, likewise ruling that Kremer was precluded from relitigating his claim of employment discrimination in Federal court under the doctrine of *res judicata*. *See Kremer v. Chemical Const. Corp.*, 623 F.2d 786, 788 (2d Cir.1980). The narrow issue before the United States Supreme Court was:

"whether a federal court in a Title VII case should give preclusive effect to a decision of a state court upholding a state administrative agency's rejection of an employment discrimination claim as meritless when the state court's decision would be res judicata in the State's own courts."

*Kremer*, 456 U.S. at 463, 102 S.Ct. at 1888. The Court began its analysis by noting that 28 U.S.C. § 1738[3] "requires federal courts to give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged." *Id.* at 466, 102 S.Ct. at 1889. The Supreme Court ruled that the judgment of the Appellate Division of the New York Supreme Court, confirming the NYHRD Appeals Board decision, clearly precluded Kremer from bringing a separate employment discrimination lawsuit in the New York state court system. The Supreme Court thus

---

**2.** The NYHRD is the state agency responsible for enforcing the civil rights laws of New York, prohibiting employment discrimination. *See* N.Y.Exec.Law §§ 295(6)(b), 296(1)(a) (McKinney 1982).

**3.** 28 U.S.C. § 1738 (1982) provides, in pertinent part, that:

"[t]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of any such State, Territory or Possession from which they are taken."

reasoned that "[b]y its terms ... § 1738 would appear to preclude Kremer from relitigating the same question in federal court." *Id.* at 467, 102 S.Ct. at 1890.

Despite the obvious applicability of section 1738, Kremer argued "[f]irst ... that in Title VII cases Congress intended that federal courts be relieved of their usual obligation to grant finality to state court decisions [and] ... [s]econd ... that the New York administrative and judicial proceedings in this case were so deficient that they are not entitled to preclusive effect in federal courts...." *Id.* The Supreme Court dismissed Kremer's first contention reasoning that "[n]othing in the legislative history of the 1964 Act suggests that Congress considered it necessary or desirable to provide an absolute right to relitigate in federal court an issue resolved by a state court." *Id.* at 473, 102 S.Ct. at 1893. The Court added that "[s]imilar views were expressed in 1972 when Congress reconsidered whether to give the EEOC adjudicatory and enforcement powers." *Id.* at 474, 102 S.Ct. at 1894. The Supreme Court thus concluded that:

> "[i]t is sufficiently clear that Congress, both in 1964 and 1972, though wary of assuming the adequacy of state employment discrimination remedies, did not intend to supplant such laws. We conclude that neither statutory language nor the congressional debates suffice to repeal § 1738's longstanding directive to federal courts."

*Id.* at 476, 102 S.Ct. at 1895. In response to Kremer's second contention, the Court stated that "the judicially created doctrine of collateral estoppel does not apply when the party against whom the earlier decision is asserted did not have a 'full and fair opportunity' to litigate the claim or issue." *Id.* at 480–81, 102 S.Ct. at 1897. The Court noted, however, that under New York law the NYHRD is to conduct an investigation and determine whether or not there is probable cause to believe that employment discrimination, in fact, exists. In New York, "[b]efore this determination of probable cause is made, the claimant is entitled to a 'full opportunity to present on the record,

though informally, his charges against his employer or other respondent, including the right to submit all exhibits which he wishes to present and testimony of witnesses in addition to his own testimony.'" *Id.* at 483, 102 S.Ct. at 1898 (quoting *State Div. of Human Rights v. New York State Drug Abuse Comm'n,* 59 A.D.2d 332, 336, 399 N.Y.S.2d 541, 544 (1977)). In addition, the complainant is entitled to have an attorney present, request that the NYHRD issue subpoenas, and rebut evidence submitted by the respondent. If the NYHRD determines that probable cause exists to support the charge of employment discrimination, the complainant is entitled to a public hearing on the merits of his claim. The Supreme Court further noted that "judicial review in the Appellate Division is available to assure that a claimant is not denied any of the procedural rights to which he was entitled and that the NYHRD's determination was not arbitrary and capricious." *Id.* at 484, 102 S.Ct. at 1899. In view of this "panoply of procedures," the court concluded that "Kremer received all the process that was constitutionally required in rejecting his claim that he had been discriminatorily discharged...." *Id.* at 483–84, 102 S.Ct. at 1898. Thus, the Supreme Court affirmed the dismissal of Kremer's Title VII claim:

> "[b]ecause there is no 'affirmative showing' of a 'clear and manifest' legislative purpose in Title VII to deny res judicata or collateral estoppel effect to a state court judgment affirming that a claim of employment discrimination is unproved, and because the procedures provided in New York for the determination of such claims offer a full and fair opportunity to litigate the merits...."

*Id.* at 485, 102 S.Ct. at 1899.

In *Kremer,* the plaintiff appealed the decision of the NYHRD Appeals Board to the New York state court and received a state court judgment on his claim of employment discrimination. The Supreme Court held that the Federal court was required to give preclusive effect to the judgment of the New York state court because

28 U.S.C. § 1738 "requires federal courts to give the same preclusive effect to *state court judgments* that those judgments would be given in the courts of the State from which the judgments emerged." *Id.* at 466, 102 S.Ct. at 1889 (emphasis added). According to the Court, because there was "a *state court judgment* affirming that a claim of employment discrimination is unproved," the doctrine of *res judicata* barred Kremer's Title VII claim in Federal court. *Id.* at 485, 102 S.Ct. at 1899 (emphasis added). In contrast to the facts in *Kremer*, Buckhalter did not receive a state court judgment nor any judicial review of his claim by an Illinois state court and thus, by its express terms, section 1738 does not apply in the present case. *See, e.g., McDonald v. City of West Branch, Mich.*, 466 U.S. 284, 104 S.Ct. 1799, 1802, 80 L.Ed.2d 302 (1984) (arbitration is not a state court judicial proceeding and thus section 1738 does not apply to arbitration awards).[4] We hasten to note, however, that the inapplicability of section 1738 does not end our *res judicata* analysis. In footnote 26 of the *Kremer* opinion the Supreme Court acknowledged the doctrine of "administrative *res judicata*," stating that "so long as opposing parties had an adequate opportunity to litigate disputed issues of fact, res judicata is properly applied to decisions of an administrative agency acting in a 'judicial capacity.'" 456 U.S. at 485 n. 26, 102 S.Ct. at 1899 n. 26 (citing *United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) ("*Utah Construction*")). In *Kremer*, the NYHRD simply investigated Kremer's claim and determined that the evidence failed to establish probable cause to believe that the employer had engaged in national origin discrimination. Because the NYHRD found a lack of probable cause at the initial step of administrative review, the agency did not proceed to the second step of review and conduct an adjudicatory hearing on the merits of Kremer's national origin race discrimination claim. Thus, the Supreme Court never reached the doctrine of "administrative *res judicata*," which applies only when the administrative agency acts in a judicial capacity. In the present case, the Illinois administrative agency investigated Buckhalter's discrimination claim, found substantial evidence to support the claim, and then conducted an adjudicatory hearing of four days in length to determine the merits of Buckhalter's claim. In view of the fact that Buckhalter received an adjudicatory hearing before the HRC, we must determine whether the well-recognized doctrine of "administrative *res judicata*," alluded to by the Supreme Court in footnote 26 of the *Kremer* opinion, applies in the present case to preclude relit-

**4.** We note that there is support for the proposition that the decision of a state administrative agency, such as the Illinois Human Rights Commission, acting in a judicial rather than investigatory capacity, is a judicial proceeding of a state court for purposes of 28 U.S.C. § 1738. *See,* Jackson, Matheson & Piskorski, *The Proper Role of Res Judicata and Collateral Estoppel in Title VII Suits,* 79 Mich.L.R. 1485, 1521 (1981). We decline to expand section 1738 to include adjudicatory hearings of a state administrative agency, but we do realize that under Illinois law, "*res judicata* ... affixes to administrative decisions that are judicial in nature." *Pedigo v. Johnson,* 130 Ill.App.3d 392, 394, 85 Ill.Dec. 702, 704, 474 N.E.2d 430, 432 (1985). In Illinois, "decisions of an administrative agency can have *res judicata* effect in a proper case. Generally, this will be where the determinations are made for a purpose similar to those of a court and in proceedings which are 'adjudicatory', 'judicial', or 'quasi judicial'." *Godare v. Sterling Steel Casting Co.,* 103 Ill.App.3d 46, 51, 58 Ill.Dec. 588, 591, 430 N.E.2d 620, 623 (1981). Indeed, in *Hughey v. Industrial Com'n,* 76 Ill.2d 577, 31 Ill.Dec. 787, 394 N.E.2d 1164 (1979), the Illinois Supreme Court held that the principle of *res judicata* precluded an employee, who failed to appeal the denial of workmen's compensation benefits by the Illinois Industrial Commission, from relitigating a claim for "the same expenses and disability for which recovery was initially sought." 76 Ill.2d at 580, 31 Ill.Dec. at 788, 394 N.E.2d at 1165. Thus, applying the relevant case law of Illinois, it is clear that the final, unappealed decision of the HRC, acting in a judicial capacity, would preclude Buckhalter from relitigating his claim of race discrimination against Pepsi-Cola in Illinois state court. As a result, if section 1738 did apply in the present case, the doctrine of *res judicata* would bar Buckhalter from relitigating his claim of race discrimination in Federal court.

igation of Buckhalter's race discrimination claim in Federal court.

In *Utah Construction*, the Supreme Court explained that "[w]hen an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hestitated to apply *res judicata....*" 384 U.S. at 422, 86 S.Ct. at 1560. The Supreme Court held that the doctrine of "administrative *res judicata*" precluded relitigation in Federal court of a claim presented to the Board of Contract Appeals, acting in a judicial capacity, because "both parties had a full and fair opportunity to argue their version of the facts and an opportunity to seek court review of any adverse findings." *Id.* Since the Supreme Court's seminal decision in *Utah Construction,* courts have consistently realized:

> "[w]hen an agency conducts a trial-type hearing, makes findings, and applies the law, the reasons for treating its decision as res judicata are the same as the reasons for applying res judicata to a decision of a court that has used the same procedure.... [R]es judicata applies when what the agency does resembles what a trial court does."

4 K. Davis, Administrative Law Treatise § 21:3, at 51–52 (2d ed. 1983). Indeed, Restatement (Second) of Judgments § 83 (1982) provides that:

> "(1) ... a valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court.
>
> (2) An adjudicative determination by an administrative tribunal is conclusive under the rules of res judicata only insofar as the proceeding resulting in the determination entailed the essential elements of adjudication...."

According to the Restatement (Second) of Judgments, the "essential elements of adjudication" include adequate notice; the right of parties to present evidence on their own behalf and rebut evidence presented by the opposition; a formulation of issues of law and fact; a final decision; and the procedural elements necessary to conclusively determine the issue in question. The rationale underlying the doctrine of "administrative *res judicata*" is that:

> "[w]here an administrative agency is engaged in deciding specific legal claims or issues through a procedure substantially similar to those employed by courts, the agency is in substance engaged in adjudication. Decisional processes using procedures whose formality approximates those of courts may properly be accorded the conclusiveness that attaches to judicial judgments. Correlatively, the social importance of stability in the results of such decisions corresponds to the importance of stability in judicial judgments. The rules of res judicata thus generally have application not only by courts with respect to administrative adjudications but also by agencies with respect to their own adjudications."

Restatement (Second) of Judgments § 83 comment b, at 268.

This court has, on numerous occasions, recognized the doctrine of "administrative *res judicata*." For example, in *Patzer v. Board of Regents,* 763 F.2d 851, 857 & n. 5 (7th Cir.1985) we observed "the generally accepted rule" that "[f]inal adjudicative decisions of administrative agencies are often res judicata as to the claims decided." Similarly, in *EZ Loader Boat Trailers, Inc. v. Cox Trailers, Inc.,* 746 F.2d 375 (7th Cir.1984), we acknowledged that:

> "where an agency acts in a judicial capacity and resolves disputes properly before it, the agency's findings may be given preclusive effect as long as the procedures utilized by the agency do not prevent the party against whom estoppel will be applied from having a fair opportunity to present its case."

746 F.2d at 377–78. Again in *Lee v. City of Peoria,* 685 F.2d 196 (7th Cir.1982), we stated that "issues of fact determined by an administrative agency acting in a judicial capacity may collaterally estop future

relitigation of administratively determined issues." 685 F.2d at 198. So too, in *Bowen v. United States,* 570 F.2d 1311 (7th Cir.1978), we recognized that "[w]ith the *Utah Construction* decision leading the way, the courts have continued to extend the doctrine of res judicata to the decisions of administrative agencies in appropriate cases." 570 F.2d at 1321. In the present case, the HRC conducted a thorough investigation of Buckhalter's race discrimination claim and concluded that substantial evidence existed to support the charge of employment discrimination. As a result, Buckhalter was entitled to fully adjudicate his claim against Pepsi-Cola in an adversarial proceeding before an ALJ. The initial issue before this court, under the doctrine of "administrative *res judicata,*" is whether the HRC was acting in a judicial capacity when it considered and ruled upon Buckhalter's claim of race discrimination.

■ The record reveals that once the HRC received Buckhalter's claim of race discrimination, it appointed Chief Administrative Law Judge Patricia Patton to preside over the matter. The parties engaged in extensive pre-trial discovery and in March 1980, the ALJ conducted an adjudicatory hearing of four days duration. Buckhalter and Pepsi-Cola, each represented by counsel throughout the proceeding, filed exhaustive memoranda of law in support of their respective positions and at the hearing each party examined and cross-examined witnesses in accord with the applicable Illinois Rules of Evidence. In addition, the parties introduced some ninety exhibits and documents, including statistical data of the patterns and racial breakdowns of Pepsi-Cola's employee discharges. The parties made opening and closing statements to the ALJ and argued numerous evidentiary issues. At the close of the four-day adversarial proceeding, the testimony was compiled in five volumes of transcripts totaling 680 pages in length. The ALJ thoroughly reviewed the record and in March 1982, issued a detailed, fourteen page opinion that was published in the Illinois Human Rights Commission Reporter, pursuant to Illinois law. *See In re Buck-*

*halter,* 7 Ill.H.R.C.Rep. at 102. The opinion contained thorough findings of fact, conclusions of law, and a cogent legal analysis applying the relevant facts to the Illinois law of employment discrimination. In evaluating Buckhalter's claim of race discrimination, the ALJ used the burden of proof framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 252–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). This burden of proof framework, which is the same one used in Federal court to evaluate an employment discrimination claim under Title VII, requires that (1) the plaintiff establish a *prima facie* case of employment discrimination; (2) the defendant articulate a legitimate, non-discriminatory reason; and (3) the plaintiff establish that the proffered reason is simply a pretext. The ALJ ruled that Pepsi-Cola had established a legitimate, non-discriminatory reason for discharging Buckhalter and that Buckhalter had failed to prove that the reason was merely pretextual. A three-member panel of the Commission issued a second published opinion affirming the ALJ's findings of fact as "not against the manifest weight of the evidence" and affirming the ALJ's conclusions of law as supported by the evidence. *In re Buckhalter,* 7 Ill.H.R.C.Rep. at 98.

In view of the fact that the HRC judicial proceeding was conducted just as a trial in Illinois state court, there can be little doubt that the HRC was acting in a judicial capacity. This court held, in *EZ Loader Boat Trailers, Inc. v. Cox Trailer, Inc.,* that the Trademark Trial and Appeal Board was acting in a judicial capacity because there was "an adversary proceeding. Both parties ... were represented by attorneys before the Board; both presented evidence and submitted briefs." 746 F.2d at 378. In the present case, Buckhalter and Pepsi-Cola were each represented by attorneys, engaged in pre-hearing discovery, filed memoranda of law in support of their re-

spective positions, examined and cross-examined witnesses, introduced exhibits, and argued numerous evidentiary issues throughout the adversarial proceeding. Moreover, the ALJ made extensive findings of fact and conclusions of law, properly applied the burden of proof framework for a claim of employment discrimination as set forth by the Supreme Court, and a three-member panel of the Commission affirmed the ALJ's decision in a published opinion. We thus hold that the HRC acted in a judicial capacity in dismissing Buckhalter's complaint on the basis that Pepsi-Cola established a legitimate, non-discriminatory reason for Buckhalter's discharge and Buckhalter failed to prove the reason was a pretext.

In addition to the administrative agency acting in a judicial capacity, the parties must have a full and fair opportunity to litigate their case before the doctrine of "administrative *res judicata*" will bar relitigation of a claim in Federal court. The state administrative agency's "findings may be given preclusive effect as long as the procedures utilized by the agency do not prevent the party against whom estoppel will be applied from having a fair opportunity to present its case." *Id.* at 377–78. In the present case, Buckhalter was represented by an attorney at all times during the pre-hearing discovery and the four-day adjudicatory hearing. In addition, Buckhalter was entitled to contest the ALJ's findings of fact and conclusions of law before a three-member panel of the HRC. The panel reviewed not only the merits of Buckhalter's claim but also the procedural and evidentiary rulings made by the ALJ. Finally, Buckhalter was entitled to appeal the HRC decision to the Cook County Circuit Court pursuant to the Administrative Review Act of Illinois. In view of the thorough procedural and evidentiary safeguards afforded Buckhalter in the HRC adjudicatory hearing, we hold that Buckhalter had a full and fair "opportunity to litigate" his claim of race discrimination. *See, e.g., Unger v. Consolidated Foods Corp.*, 693 F.2d 703, 705–06 (7th Cir.1982), *cert. denied*, 460 U.S. 1102, 103

S.Ct. 1801, 76 L.Ed.2d 366 (1983) (judicial proceedings of the Illinois FEPC satisfy due process requirements).

█ The final inquiry is whether the principles of *res judicata* apply in this case to preclude Buckhalter from relitigating his claim of race discrimination in Federal court. The law in this circuit is that *res judicata* applies when there is "(1) a final judgment on the merits in an earlier action; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Lee v. City of Peoria*, 685 F.2d at 199 (citing *Nash County Board of Education v. Biltmore Co.*, 640 F.2d 484, 486 (4th Cir.), *cert. denied*, 454 U.S. 878, 102 S.Ct. 359, 70 L.Ed.2d 188 (1981)). In the present case, Buckhalter clearly obtained a final judgment on the merits of his race discrimination claim, as the ALJ found that "despite all of complainant's detailed testimony on the events of the night in question, I have no reason to believe that Robert Buckhalter's discharge came about as a result of an indiscriminate imposition of discipline upon black employees." *In re Buckhalter*, 7 Ill.H.R.C.Rep. at 109. The ALJ ruled that Pepsi-Cola had established a legitimate, non-discriminatory reason for discharging Buckhalter and that Buckhalter failed "to show [Pepsi-Cola's] given reasons to be pretextual." *Id.* at 114. The HRC affirmed the ALJ's decision on the basis that "the facts contained in the administrative record are not against the manifest weight of the evidence...." *Id.* at 98. According to the HRC, Pepsi-Cola "had a valid non-discriminatory reason—doubt as to the sufficiency of its case against Ault—for reinstating Ault but not complainant or Lynch." *Id.* at 99. The fact that Buckhalter failed to appeal the HRC's decision to the Circuit Court of Cook County does not affect the finality of the decision because an adverse decision "from which no appeal has been taken is res judicata and bars any future action on the same claim...." *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 4, 101 S.Ct. 2424, 2428 n. 4 (1981). *See also*

C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4427, at 270 (1981). Moreover, Buckhalter's claim of race discrimination in violation of Title VII and 42 U.S.C. § 1981 is identical to the claim of race discrimination litigated before the HRC. The district court properly found that the Federal lawsuit and the HRC proceeding involved "identical claims and issues." *Buckhalter v. Pepsi-Cola Gen. Bottlers,* 590 F.Supp. at 1148. *Accord Unger v. Consolidated Foods Corp.,* 693 F.2d at 705 ("the Illinois prohibition against discrimination in employment, Ill. Rev.Stat. ch. 48, ¶ 853, is at least as broad as that of Title VII"). Indeed, the ALJ, just as a Federal court in a Title VII case, used the burden of proof framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. at 802–03, 93 S.Ct at 1824–25, and *Texas Department of Community Affairs v. Burdine,* 450 U.S. at 252–56, 101 S.Ct. at 1093–95 to analyze Buckhalter's claim and rule that Pepsi-Cola established a legitimate, non-discriminatory reason for Buckhalter's discharge. Finally, the parties in the Federal lawsuit, Buckhalter and Pepsi-Cola, are the same parties who appeared in the HRC judicial proceeding.[5] In view of this evidence, and the fact that the HRC was clearly acting in a judicial capacity when it dismissed Buckhalter's claim of race discrimination, we hold that under the doctrine of "administrative *res judicata,*" as alluded to in footnote 26 of the *Kremer* opinion, Buckhalter is barred from relitigating his claim of race discrimination in Federal court. *Accord, Zywicki v. Moxness Products, Inc.,* 610 F.Supp. 50, 51–52 (E.D.Wis.1985).

Despite the clear applicability of the doctrine of "administrative *res judicata*" in the present case, Buckhalter argues that under the express language of footnote 7 of the *Kremer* opinion, all "unreviewed administrative determinations by state agencies" are entitled to *de novo* review in Federal court. 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. According to Buckhalter, this language includes even those cases where the administrative agency has conducted an adjudicatory hearing on the merits of the employment discrimination claim. Buckhalter finds support for this overly broad interpretation of footnote 7 in three recent district court opinions, *Reedy v. State of Fla., Dept. of Educ.,* 605 F.Supp. 172 (N.D.Fla.1985), *Parker v. Danville Metal Stamping Co.,* 603 F.Supp. 182 (C.D. Ill.1985), and *Jones v. Progress Lighting Corp.,* 595 F.Supp. 1031 (E.D.Pa.1984). We believe that these cases misinterpret footnote 7 and fail to acknowledge the language in footnote 26 of the *Kremer* opinion that under the doctrine of "administrative *res judicata,*" the decision of a state administrative agency acting in a judicial capacity is to be given *res judicata* effect. Moreover, these cases fail to make the critical distinction that in *Kremer* the NYHRD exercised only its investigative authority in determining whether or not there was probable cause to support Kremer's discrimination claim. Because the NYHRD found a lack of probable cause to support Kremer's claim at the initial step of the administrative review process, the NYHRD did not conduct an adjudicatory hearing on the merits of Kremer's national origin discrimination claim.

In footnote 7 of the *Kremer* opinion, the Supreme Court stated that "[s]ince it is settled that decisions by the EEOC do not preclude a trial *de novo* in federal court, it is clear that unreviewed administrative determinations by state agencies also should not preclude such review even if such a decision were to be afforded preclusive effect in a State's own courts." 456 U.S. at 470 n. 7, 102 S.Ct. at 1891 n. 7. The

**5.** Buckhalter added Roger Thomas Kiekhofer, the manager of Pepsi-Cola's 51st Street plant, and Robert Friend, the Industrial Relations Manager, as defendants in his section 1981 claim. Though Kiekhofer and Friend were not parties to the HRC adjudicatory proceeding, Buckhalter's claim of race discrimination against them is precluded under the doctrine of defensive collateral estoppel. *See Blonder-Tongue v. University Foundation,* 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971); *Lambert v. Conrad,* 536 F.2d 1183, 1186 (7th Cir.1976).

Court's reference to the EEOC in footnote 7 is extremely helpful and enlightening as the law is clear that the EEOC's sole function in employment discrimination cases is to "make an *investigation* thereof." 42 U.S.C. § 2000e–5(b) (emphasis added). Following the investigation, if the EEOC determines that "there is reasonable cause to believe that the charge [of discrimination] is true," *id.*, it attempts to conciliate the matter with the employer, and if unsuccessful, it files a civil action "in the appropriate United States district court," 42 U.S.C. § 2000e–5(f)(1). The EEOC clearly has no authority to conduct an adjudicatory hearing, instead, if it determines after a complete investigation that there is reasonable cause in the record to establish employment discrimination, the EEOC files a complaint in Federal district court where the complainant is entitled to a trial on the merits. In stark contrast, in many states, such as Illinois, the state administrative agency conducts a thorough investigation, and if it concludes that there is substantial evidence of employment discrimination, the state administrative agency, acting in a judicial capacity, conducts an adjudicative hearing with all of the concomitant procedural and evidentiary safeguards. In footnote 7, the Supreme Court was clearly referring to the state administrative agency in its investigatory capacity as it analogized the state agency to the EEOC, a Federal agency that is authorized to act only in an investigatory capacity. The import of footnote 7 is that neither an investigatory determination of the EEOC nor an investigatory determination of a state administrative agency precludes a trial *de novo* in Federal court. The Supreme Court made clear, however, in footnote 26 of the *Kremer* opinion, that when the state administrative agency acts in a judicial capacity, its ruling on the claim of employment discrimination is entitled to preclusive effect in the Federal court under the doctrine of "administrative *res judicata.*"

■ We add that our application of the "administrative *res judicata*" doctrine in the present case is to be narrowly construed and used only in those situations where the state administrative agency, while acting in a judicial capacity, has reviewed the merits of the complainant's employment discrimination claim and has ruled that the evidence does not support such a claim. In those situations where the complainant prevails on his claim of discrimination before the state administrative agency, he may be entitled to bring a subsequent Title VII suit in Federal court to supplement his state remedies. *See, e.g., Patzer v. Board of Regents,* 763 F.2d 851, 857 (7th Cir.1985). Indeed, as the Supreme Court clearly recognized in *New York Gaslight Club, Inc. v. Cary,* 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) ("*Gaslight Club* "), in a Title VII action:

> "[i]nitial resort to state and local remedies is mandated, and recourse to the federal forums is appropriate only when the State does not provide prompt or complete relief."

> \* \* \* \* \* \*

> "Title VII explicitly leaves the States free, and indeed encourages them, to exercise their regulatory power over discriminatory employment practices. Title VII merely provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums."

447 U.S. at 65, 67, 100 S.Ct. at 2032, 2033. *See also Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 48–49, 94 S.Ct. 1011, 1019–20, 39 L.Ed.2d 147 (1974) ("Title VII was designed to supplement, rather than supplant, existing laws and institutions relating to employment discrimination."). In *Batiste v. Furnco Construction Corp.,* 503 F.2d 447 (7th Cir.1974), this court was faced with the very situation alluded to by the Supreme Court in *Gaslight Club.* The complainant prevailed on his employment discrimination claim before the state administrative agency and then filed a Title VII action to obtain a supplemental backpay award. This court held that "the fact that final judgment was issued in the state proceedings does not bar this [supplemental] action nor deprive plaintiffs of their right to relief in federal

court." *Batiste v. Furnco Construction Corp.*, 503 F.2d at 451. In the present case, however, the HRC, acting in its judicial capacity, determined that the evidence did not support Buckhalter's claim of employment discrimination. Pursuant to footnote 26 of the *Kremer* opinion and the doctrine of "administrative *res judicata*," the Federal courts are to give preclusive effect to this final adjudicatory determination of the Illinois state administrative agency. Accordingly, we agree with the district court and hold that the doctrine of "administrative *res judicata*" bars Buckhalter's Title VII claim in Federal court. Moreover, in the present case there is "no reason to distinguish civil rights actions brought under section [ ] 1981 ... from suits brought under Title VII for purposes of applying res judicata," and thus we hold the doctrine of "administrative *res judicata*" also bars Buckhalter's section 1981 claim in Federal court. *Lee v. City of Peoria*, 685 F.2d at 199.

### III

We affirm.