**Ronald BATTLE, Plaintiff,**

v.

**William ISAAC, Chairman, Federal Deposit Insurance Corporation, Defendant.**

No. 84 C 271.

United States District Court, N.D. Illinois, E.D.

Jan. 2, 1986.

Paddy Harris McNamara, Chicago, Ill., for plaintiff.

Ann L. Wallace, Asst. U.S. Atty., Chicago, Ill., Ingeborg G. Chaly, Senior Atty., Federal Deposit Ins. Corp., Washington, D.C., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

■ This case presents the question of whether an unappealed finding by the State Unemployment Commission that a federal employee was fired for misconduct bars him from suing his employer for race discrimination and retaliatory discharge under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2, 2000e–3. This court concludes that since plaintiff has not yet had his "day in court" on the precise issues of discrimination and retaliation, it does not. However, his claim can only survive if he can supply this court with evidence supporting his allegations that employees with similar misconduct on their records were not fired.

## DISCUSSION

The plaintiff, Ronald Battle, started with the Federal Deposit Insurance Corporation (FDIC) in Chicago as a Bank Examiner Student Assistant (GG–4) in 1974 and rose to Bank Examiner Assistant (GG–9) by 1978. There his career stalled. He and another black bank examiner filed a class action suit against the FDIC, alleging discrimination in its promotion policies in 1980, which was certified in 1983. *See Allen v. Isaac,* 99 F.R.D. 45, *amended* 100 F.R.D. 373 (N.D.Ill.1983). The case was recently tried before Judge Hart.

About one month before the certification was announced, Battle was fired. The problem was travel expense vouchers which he had submitted for six days in December of 1982. They showed him driv-

ing his own car to various job assignments, when in fact he had ridden with a coworker. Battle maintains that he accidentally made a clerical error, but the FDIC found an intentional falsification and terminated him. When Battle applied for unemployment compensation, the claims adjudicator, the hearing referee and the board of review of the Illinois Department of Labor all agreed that he was disqualified from benefits because he had violated employer policy.

Defendant FDIC argues that it is entitled to summary judgment because the employment compensation proceedings have collaterally estopped Battle from claiming wrongful discharge, retaliation and racial discrimination. This court denied an earlier motion for summary judgment grounded on substantially the same argument. *Battle v. Isaac*, No. 84 C 271 (N.D.Ill. June 28, 1985). Shortly thereafter the Seventh Circuit decided *Buckhalter v. Pepsi-Cola General Bottlers, Inc.*, 768 F.2d 842 (7th Cir. 1985), which held that an Illinois Human Rights Commission determination had preclusive effect on a Title VII suit. Defendant's new motion is in effect a request to reconsider in light of *Buckhalter*.

 The analysis must begin with things which *Buckhalter* did not do. First, contrary to the impression that both plaintiff and defendant seem to have, that case did not hold that unappealed state administrative determinations have the same preclusive effect which would be given to a state court judgment under 28 U.S.C. § 1738. Section 1738 requires federal courts in suits on federal statutes to give a state judicial proceeding the same effect in matters of claim and issue preclusion which the courts of the state would give it, unless Congress has created an exception for that federal statute. *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). A § 1738 question therefore is decided on the preclusion law of the state which issued the judgment. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985). *Buck-*

*halter*, however, specifically rejected any application of § 1738 to administrative determinations. Section 1738 covers only state court judgments, *i.e.*, judicial proceedings. If a state agency determination has not been appealed to a state court, § 1738 does not apply. The preclusive effect of the determination is a matter of federal law, although courts can of course look to state law, as well as cases involving § 1738, for guidance. 768 F.2d at 849; *see also McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984). In other words, *Buckhalter* applied administrative *res judicata* as a matter of federal, not Illinois, law. 768 F.2d at 853.

 Second, *Buckhalter* did not hold that every state agency determination involving a Title VII plaintiff had preclusive effect as to all matters which could have been litigated before it. Analysis still begins with the presumption that federal courts are the best place to resolve questions of discrimination. *Rosenfeld v. Department of the Army*, 769 F.2d 237, 239 (4th Cir.1985). *Buckhalter* held, rather, that a state administrative agency ruling may be given preclusive effect in an employment discrimination suit when (1) the agency acted in a judicial capacity, 768 F.2d at 850, (2) the parties had a full and fair opportunity to litigate their claim before the agency, 768 F.2d at 852, and (3) the principles of claim or issue preclusion law, such as identical parties and identical claims and issues, apply on the facts to bar the claim or issue. 768 F.2d at 852–853.

In the instant case one cannot be certain that any prong of that three-pronged test is definitely satisfied. The agency apparently acted in a judicial capacity. But in *Buckhalter*, the proceeding was conducted just as a trial in a state court would have been: pretrial discovery, "exhaustive memoranda of law," testimony, cross-examination, some 90 exhibits and documents, a 680-page transcript, and a 14-page opinion by the Administrative Law Judge. 768 F.2d at 851. In this case Battle was represented by an attorney and the referee took testimony, but the one-page referee's decision

and the other surroundings are hardly as judicially elaborate as those in *Buckhalter.*

We may set that question aside, however, since in any case the second and third prongs have not been met. Battle did not have a full and fair opportunity to litigate his claim of race discrimination before an agency which deals with unemployment compensation. In *Buckhalter* the plaintiff had taken his claim of racial discrimination to the state agency charged with hearing claims of discrimination, the Illinois Human Rights Commission. The state statute on which his claim was grounded was substantially similar to Title VII, and the Commission even used the legal framework for burden of proof which federal courts use in discrimination cases. 768 F.2d at 843, 851. *Cf. Kremer,* 456 U.S. at 467, 102 S.Ct. at 1890; *Parker v. National Corp. for Housing Partnerships,* 619 F.Supp. 1061 (D.D.C.1985). In the instant case, Battle was facing an agency which administers unemployment insurance. It could well have found a claim of disparate treatment irrelevant. *Cf. Jones v. City of Alton,* 757 F.2d 878, 882–883 (7th Cir.1985).[1] Under 42 U.S.C. § 2000e–16, a Title VII action is the exclusive remedy for a federal employee charging discrimination in employment. *Cf. Rosenfeld,* 769 F.2d at 240. State administrative agencies have no jurisdiction over Title VII claims. *Patzer v. Board of Regents, University of Wisconsin,* 763 F.2d 851, 857 (7th Cir.1985). There is no indication in either the referee's decision or the Board's opinion that a claim of discriminatory treatment was either raised or considered.

. Also, under ordinary principles of the law of preclusion, the result of an unemployment action would not bar a discrimination claim. *Res judicata* and collateral estoppel fundamentally seek to ensure that a plaintiff has one day in court on his claim, but only one. *Township of Hopewell v. Volpe,* 446 F.2d 167, 170 (3d Cir.1971); *Hooper v. United States,* 326 F.2d 982, 985 (Ct.Cl.1964). To that end the law of preclusion calls for an examination of the parties, claims and issues in both the prior litigation and the case now being brought. The closer they are to being identical, the more likely that the first judgment will block the second. For example, the court in *Buckhalter* emphasized that the claim of race discrimination which had been before the agency was identical to the claim of race discrimination being brought before the court under Title VII. 768 F.2d at 853; *see also Patzer,* 763 F.2d at 855.

■ In a case of administrative preclusion, the inquiry for the second and third prongs of the *Buckhalter* test will tend to yield the same result. An agency's decision is more likely to have preclusive effect when the agency has responsibility for the subject matter the plaintiff is raising in federal court. On the other hand, if the agency's prime responsibility lies elsewhere, the claims and issues actually litigated will tend to be different. *Jones,* 757 F.2d at 886. Under ordinary principles of preclusion law, even when the issues appear to be factually similar, if the statutes on which the actions are based are different and serve different purposes, then one cannot assume that issues will be identical. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 362 (4th Cir.1985). The instant case provides an example. The issue before the agency was whether Battle had engaged in the misconduct of which he was accused. Once it had determined that he had, its work was done. That, however, is not the only question for purposes of a discrimination suit. If persons of other races falsify travel vouchers but do not get fired for it, as Battle alleges, then Battle

---

1. A recent Fourth Circuit case which found that plaintiff was estopped from litigating a constitutional claim by his state unemployment compensation proceedings is not to the contrary. *Stall v. Bourne,* 774 F.2d 657 (4th Cir.1985). First, the claim in that case was a First Amendment question, not a Title VII one. The plaintiff alleged that he had lost municipal employment because he supported the wrong candidate for school board chairman. Second, he had appealed the administrative finding to state court, thus implicating § 1738 and South Carolina law. Third, the court expressly found that he had raised the First Amendment issue before the agency and been given full and fair opportunity to litigate it.

can be a victim of discrimination even though the FDIC had good cause to terminate him. *See Jones*, 757 F.2d at 886; *Ross*, 759 F.2d at 362.

The difference means that Battle is not estopped on the issues of retaliatory discharge and discrimination. The *Ross* court, in a § 1738 case, found that Maryland law would not estop a plaintiff who had lost his claim for unemployment benefits from bringing a Title VII action alleging retaliatory discharge. The issues were not identical because the statutes and policies were not identical. 759 F.2d at 362. Similarly, this court today found that Illinois law would not estop an employer who had challenged an award of unemployment benefits to its former employee, and lost, from alleging the same misconduct as a legitimate nondiscriminatory reason in the employee's age discrimination suit. *Kendall v. C.F. Industries, Inc.*, 624 F.Supp. 1102 (N.D.Ill.1986). Unemployment proceedings have different opportunities to litigate, different standards, and different policies to serve, compared to discrimination suits. In particular, a claimant for unemployment benefits loses if he has been justly fired. The same claimant could still win a discrimination suit by proving that his employer should have fired more people. *Jones*, 757 F.2d at 887.

*Buckhalter*, therefore, does not indicate that Battle's loss of benefits estops him from bringing these claims. While the agency may have been functioning in a judicial capacity, he did not have a full and fair opportunity to litigate the issues of retaliatory discharge and discrimination there, because those issues are different from misconduct.

This court, however, does not take the unemployment determination lightly. It recognizes the heavy burden of proof placed on employers in such a proceeding. Since the law there is interpreted according to its policy goal of easing the burden on workers, *Be-Mac Transport Co. v. Grabiec*, 20 Ill.App.3d 345, 314 N.E.2d 242 (1st Dist.1974), an employer must show that the employee wantonly or willfully disregarded his employer's interest. *Winklmeier v. Board of Review*, 115 Ill.App.3d 154, 450 N.E.2d 353, 70 Ill.Dec. 880 (5th Dist.1983). An employer defending against a discrimination suit, on the other hand, has at most a burden of production. If plaintiff makes out a *prima facie* case of discrimination, the employer must then produce a legitimate nondiscriminatory reason. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Since the FDIC has met the far heavier burden of an Illinois Unemployment Compensation hearing, it will have no difficulty showing that it had a legitimate nondiscriminatory reason for firing Battle.

This case can therefore still be resolved at summary judgment. Battle has as yet submitted no evidence to support his allegations that he was treated differently from his co-workers because of his race or because he had filed suit. In other words, he does not yet have a *prima facie* case. Because he is entitled to his "day in court" on these issues, his claim survives estoppel as a matter of law. But the decision today only gives him an opportunity to submit such evidence. While the non-moving party has the benefit of all favorable inferences on a motion for summary judgment, he cannot simply rest on his pleadings. *See Ross*, 759 F.2d at 364–365. Evidence tending to show that Battle was treated in a manner disparate from that in which white bank examiners with inflated travel vouchers or similar transgressions were treated would tend to support the discrimination claim. *Cf. Jones*, 757 F.2d at 883. Evidence tending to show a causal connection between his filing suit and his discharge would tend to support the retaliation claim. *Cf. Ross*, 759 F.2d at 365. Since defendants moved for summary judgment only on collateral estoppel grounds, however, the absence of such evidence is not now an issue.

## CONCLUSION

Defendant's motion for summary judgment is denied.