John **HEALY**, Stanley L. **Frost**, Joseph **Brown** and Jesse **Politi**, Plaintiffs,

v.

**TOWN OF PEMBROKE PARK**, a Florida Municipality, Gerald J. **Yourman**, Benjamin **Linet**, Helen **Lofland**, James **Crocco** and Daniel **Weekley**, Defendants.

Nos. 82–6368–Civ, 82–6369–Civ, 82–6441–Civ and 82–6442–Civ.

United States District Court, S.D. Florida.

May 29, 1986.

Jeffrey A. Sarrow and Bernard D. Canarick, Plantation, Fla., for plaintiffs.

Michael Burke and E. Bruce Johnson of Fleming, O'Bryan & Fleming, Fort Lauderdale, Fla., A.J. Ryan, Jr., Dania, Fla., and Harold D. Smith, Hollywood, Fla., for defendants.

## ORDER

PAINE, District Judge.

This cause is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction (DE 76), Plaintiff's Memorandum in opposition thereto (DE 78); Consolidated Plaintiffs' Motion for Partial Summary Judgment on Liability (DE 74), the Defendants' Reply Memorandum in Opposition thereto (DE 78); Defendants' Motion for Summary Judgment on Damages (DE 68), the Plaintiffs' Memorandum in Opposition thereto (DE 81); the Defendants' Memorandum of Law in Support of the Individual Defendants' Motion to Dismiss on the Grounds of Absolute Legislative Immunity (DE 80); the Defend-

ants' Motion to Bifurcate (DE 79); and the Plaintiffs' Supplemental Memorandum Re: Collateral Estoppel and Res Judicata (DE 82).

*The Complaint*

The complaint in these four consolidated cases is the same. The Plaintiffs are four policemen who are suing 1) the municipality where they were formerly employed, PEMBROKE PARK, 2) the Mayor of Pembroke Park, YOURMAN, and 3) four Pembroke Park municipal commissioners, LINET, LOFLAND, CROCCO and WEEKLEY. The action is brought against the above defendants individually and in their official capacities. It is a civil action for preliminary and permanent injunctions to prevent deprivation under color of state law of certain rights, privileges and immunities secured to the Plaintiff by the Constitution of the United States, for an Order declaring unconstitutional the discriminatory acts of defendants, and for money damages to redress the injury caused to Plaintiff by the unconstitutional acts of Defendants. The complaint states that the action is brought pursuant to Title 28 U.S.C. § 2201, 2202 and Title 42 U.S.C. § 1983. Jurisdiction is conferred by 28 U.S.C. § 1343.

Plaintiff, Jesse Politi, was employed by Pembroke Park as a police officer on February 9, 1975 and was discharged by the Town on September 30, 1980. The employment of the other plaintiffs is as follows:

Plaintiff Brown —employed as police officer March 7, 1979
terminated Sept. 30, 1980
Plaintiff Frost —employed as police officer June 20, 1976
terminated Sept. 30, 1980
Plaintiff Healy —employed as police officer August 21, 1979
terminated Sept. 30, 1980

The Complaint alleges that the Plaintiffs, as public employees, have a state constitutional right not to have their right to work abridged, or denied on account of membership or non-membership in a union or labor organization, the right to bargain collectively and to be represented in the determi-

nation of grievances pursuant to Art. I Sect. 6 of Florida Constitution and Fla. Statutes 447.301.

On or about October 1978, the Plaintiffs became represented by the Fraternal Order of Police (FOP), a labor organization. On or about October 1979, the Town signed a collective bargaining agreement (CBA) with the FOP. The contract was to cover the period from October 1, 1979 through September 30, 1980. According to the Complaint, during that year numerous disputes arose over the interpretation and application of the collective bargaining agreement. The Complaint alleges that as a result of these disputes, all the defendants developed "hostile, hateful and vengeful attitudes toward the plaintiffs' labor organization". The Complaint alleges that the Town refused to grant grievances or process them properly. The Town and its Mayor refused to negotiate over a new CBA and informed the FOP that it was considering contracting the police service to an outside agency. Ultimately, on July 9, 1980, the Commissioners *voted* to enter into a contract with the Broward County Sheriff to perform all police work for the Town. The contract became effective October 1, 1980. On September 30, 1980 the Plaintiffs were discharged.

The FOP filed timely Unfair Labor Practice charges with the State of Florida, Public Employee Relations Commission (PERC) charging violations of Florida Statute 447.-501(1)(a)(b) and (c). The life of the PERC proceedings is as follows [1]: On September 10, 1980, the FOP filed an Unfair Labor Practice charge alleging that the Town violated Florida Statutes by refusing to meet with FOP representatives to negotiate a successor collective bargaining agreement and by unilaterally, and in response to the employees' protected activities, contracting out their work so as to avoid bargaining and otherwise dealing with the FOP. PERC found the charge sufficient and or-

---

**1.** This recitation of the procedural history of the PERC proceedings and the subsequent state court review is taken from the Plaintiffs' Memorandum in Opposition to Motion to Dismiss for Lack of Subject Matter Jurisdiction. We are reviewing these matters in the light most favorable to the Plaintiff.

dered the Town to file an answer on or before October 8, 1980. An evidentiary hearing on the charge was scheduled for October 30, 1980. When no answer to the charge was filed by October 14, 1980, PERC issued an order directing the Town to show cause within ten days why its failure to answer should not be deemed an admission of the material facts in the charge. The Town failed to demonstrate that good cause existed to justify its failure to file an answer. Thus, the material facts were deemed admitted. PERC concluded *inter alia*, that "By entering into a contract for police services with the Sheriff of Broward County on July 9, 1980, to avoid bargaining collectively and otherwise dealing with the FOP, to avoid entering into a new collective bargaining agreement with the FOP, to discourage membership in the FOP, and to retaliate against the FOP and its members for having filed grievances against the Town, the Town engaged in an unfair labor practice within the meaning of Section 447.501(1)(a) and (b) Florida Statutes 1979." PERC ordered full reinstatement. This PERC decision of March 12, 1981 was appealed to the First District Court of Appeals, State of Florida, and on November 23, 1981, the appeal was dismissed for lack of prosecution. The Plaintiffs sought enforcement of the PERC order in the Circuit Court in Broward County. The Circuit Court found that the Town had failed to comply with PERC's Order of March 12, 1981, as well as a further Order dated May 21, 1981. The Town appealed this Order to the Fourth District Court of Appeal. On March 8, 1983, the Circuit Court granted a Motion to Vacate the automatic stay of the Court's Order created by the Town's appeal and further ordered the Town to reinstate its former police officers no later than April 13, 1983 (some two years after the initial Order of reinstatement). Once again, the Town sought review in the Fourth District Court of Appeal of the Order vacating the automatic stay. Review was denied on April 4, 1983.

On April 8, 1983, the Town then filed a Petition for Writ of Mandamus, or Writ of Prohibition with the Supreme Court of Florida seeking to review the Fourth District Court of Appeal's action on the vacation of the automatic stay. This Petition was denied by the Supreme Court on April 15, 1983.

On February 15, 1984, the Fourth District Court of Appeal affirmed the Order of November 12, 1982, which enforced the original PERC Order. The Town appealed this decision to the Florida Supreme Court, which declined to accept jurisdiction.

In August 1982, litigation on the amount of backpay due to the Plaintiffs and others was commenced before PERC. On November 29, 1983, PERC entered an Order on backpay and required the Town to pay the attorneys' fees incurred by the FOP. Discovery then commenced on the issue of attorneys' fees. The Town sought to limit discovery and, after being refused, filed a Petition for Writ of Certiorari to the Fourth District Court of Appeal. That Petition was denied. Likewise, the Court sought review of the backpay Order of the Fourth District Court of Appeal. This matter is still pending.

The Complaint alleges that the Town has refused to comply with the PERC Order. It further alleges that the defendants have wrongfully discharged the Plaintiffs and entered into the contract with the Sheriff of Broward County to avoid bargaining collectively with Plaintiffs' labor representative, to avoid entering into a new collective bargaining agreement with Plaintiffs' labor organization, to discourage Plaintiffs' membership in a labor organization and to retaliate against Plaintiffs and their labor organization for filing grievances against the defendant, TOWN, in violation of Florida Statute 447.501(1)(a) and (b) and Art. I Sect. 6 of the Constitution of the State of Florida. The Complaint alleges that the above actions have violated Plaintiffs' civil rights under the First and Fourteenth Amendments of the Constitution of the United States.

I. *Plaintiffs Have Stated a Claim Under 42 U.S.C. § 1983 (1979).*

 Two and only two allegations are required in order to state a cause of action

under § 1983. First, the plaintiff must allege that some person acting under color of state law has, —second, deprived him of a federal right. *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). There is no question but that the defendants here, the Mayor, the Commissioners and the Town satisfy the first requirement. The federal right alleged to have been deprived presents a more confusing question. The Complaint alleges wrongful termination of employment based on the first and fourteenth amendments. We interpret the allegations to state that the plaintiffs were deprived of their employment for impermissible reasons, i.e. based on the Defendants'[2] hostility toward the FOP and its members, the Defendants desire to retaliate against the FOP and its members and the desire of the Defendants not to have to deal with the FOP or its members in the future. The Complaint does not allege a procedural due process claim, in other words, that the pre-termination or post-termination procedures afforded to them were inadequate. Thus, we will not engage in an analysis of the constitutionality of the termination process.[3] Rather, the plaintiffs' claims of termination due to anti-union animus are first amendment infringements. The first amendment guarantees of free speech and association extend to the protection of an individual's right to join a labor union. *Smith v. Arkansas State Highway Employees,* 441 U.S. 463, 99 S.Ct. 1826, 60 L.Ed.2d 360 (1979). A public employee may not be discharged or otherwise subjected to retaliation because of the exercise of his right to join a union. *Professional Association of College Educators v. El Paso County Community College District,* 730 F.2d 258 (5th Cir.1984) ("Thus, the First Amendment is violated by state action whose purpose is either to intimidate public employees from joining a union or from taking an active part in its affairs or to retaliate against those who do.") In *Professional Association,* supra, the Court went on to say that, "the issue is not whether a public employer is required to deal with the union ..., but whether the employer can deliberately set out to destroy an association of public employees for the purpose of preventing the exercise of their first amendment rights" 730 F.2d at 262. Further, there is no Constitutional requirement that an employer establish a grievance procedure available to the union and its members. But once such procedure has been established, then an employer may not discriminate or retaliate against union members in administering that process. 730 F.2d at 263.

■ In our case, the plaintiffs represented by their union had entered into a collective bargaining agreement and had established concomitant grievance procedures with the defendants' initial cooperation. The plaintiffs' allegations that the defendants entered into a subsequent agreement with the Broward County Sheriff's office to contract out the plaintiff's work in order to

---

**2.** For purposes of this part of the discussion we shall include all defendants, the Mayor, Commissioners and the municipal entity.

**3.** In *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985) the Court described the process due as notice and the opportunity to be heard prior to the discharge of an employee who has a constitutionally protected property interest in his employment and a post-termination hearing. The Plaintiffs have not quarreled with the termination *procedures,* except that counsel for the Plaintiffs in his Motion for Partial Summary Judgment on Liability states, "These are consolidated actions in which Plaintiffs, former police officers of the Town of Pembroke Park, claim that the Town violated their federally protected property rights by terminating their employ-

ment *without hearing* and eliminating their positions as police officers in order to discourage their membership in the Fraternal Order of Police by discrimination in regard to tenure and retaliate against them, as members of the Fraternal Order of Police for the filing of grievances against the Town." The cure would be to amend the Complaint to allege a violation of due process in that plaintiffs were terminated without a hearing. *See, Parker v. Cronvich,* 567 F.Supp. 1073 (E.D.La.1983) (where Plaintiffs complained that termination of their employment was an illegal retaliation against their constitutionally protected exercise of the rights of free speech, free association, and free collective bargaining. The District Court allowed the plaintiffs to amend their complaint at trial to include a procedural due process claim.)

abort the established grievance procedures, avoid entering into a renewed collective bargaining agreement and to retaliate against the plaintiffs is sufficient to warrant remedy under 42 U.S.C. § 1983.

## II. *The Individual Defendants are Immune from Liability Under § 1983.*

Although no motion to dismiss on grounds of absolute immunity is of record among the pleadings, the memorandum (DE 80) in support of such a motion is an adequate substitute and is construed as a motion to dismiss on those grounds.

■ The Plaintiffs have alleged a cause of action under § 1983, but they may not succeed in prosecuting their claim against the individual defendants in that they are absolutely immune from suit for actions taken in a legislative capacity. The Plaintiffs have sued GERALD YOURMAN as the duly elected mayor of the Town of Pembroke Park. They have sued HELEN LOFLAND, BENJAMIN LINET, JAMES CROCCO and DANIEL WEEKLEY as the duly elected Commissioners of the Town of Pembroke Park. The Complaint states after each name that the action is brought against that defendant individually and in his official capacity as Mayor or Commissioner of the said municipality respectively.

■ In our research, we came across a recent Supreme Court case which set out the distinction between personal and official capacity actions. *Kentucky v. Graham,* — U.S. —, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985). ("Because this distinction apparently continues to confuse lawyers and confound lower courts, we attempt to define it more clearly through concrete examples of the practical and doctrinal differences between personal and official capacity actions.") Accordingly, where a complaint sues an individual personally for actions taken under color of state law, an award of damages can only be executed against the official's personal assets. If the complaint states that the official is sued in his official capacity, then that represents only another way of pleading an action against the government enti-

ty that employs the official. A damages award in that regard would be recoverable against the entity itself. *Kentucky,* 105 S.Ct. at 3105. This distinction makes a difference in the assertion of defenses. An official sued in a personal capacity may raise the defense of personal immunity such as objectively reasonable reliance on existing law. *Kentucky,* 105 S.Ct. at 3106. Here, the defendants are raising the defense of absolute legislative immunity. An official sued in his official capacity can only raise the defense of the entity itself, that is, sovereign immunity. Therefore, "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell,* supra, local government units can be sued directly for damages and injunctive or declaratory relief." *Kentucky,* 105 S.Ct. 3106 f.n. 14, citing *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Since the style of the complaint names the Town of Pembroke Park, to eliminate the redundancy we will now consider the motion to dismiss the individual defendants in their personal capacity, and later in this Order consider the cause of action against the Town.

The individual defendants' argument is that since the events in the Complaint ultimately resulted in a vote to contract out the police services of Pembroke Park with the Broward County Sheriff's Office, the individual defendants were acting in a legislative capacity and are therefore, absolutely immune. They further argue, that even if their decision was based on anti-union animus, it does not affect their absolute immunity. Plaintiffs agree that immunity does exist for certain officials acting in a legislative capacity, but that in this case, there is a factual question whether the defendants were acting in a legislative capacity. Therefore, plaintiffs argue, it is a jury question whether the individual defendants' immunity is absolute or qualified. The Plaintiffs rely on *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) to support their argument that the test which this court should

apply is whether the official in question should reasonably know that he is violating constitutional rights.

We find that the *Harlow* case, supra, is not dispositive of our case since the issue involved there was whether certain aides to President Nixon could enjoy "derivative" immunity to that enjoyed by the President. The court answered the question in the negative. They referred in their discussion, however, to the scope of the legislative immunity of Senators and their aides, and cited a previous case, *Gravel v. United States*, 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). In *Gravel*, the court considered the scope of immunity provided to legislators and their aides to extend not only to the voting process, but also to committee reports and proceedings and to conduct "within the sphere of legitimate legislative activity." *Gravel*, 92 S.Ct. at 2614. This immunity is derived from the Speech and Debate Clause and it only reaches to matters which are "an integral part of the deliberative and communicative processes by which Members [of Congress] participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation...." *Gravel*, 105 S.Ct. at 2627. Recent cases have held that local legislators are entitled to absolute immunity from suit under the Civil Rights Act of 1871 for conduct in furtherance of their duties. *Hernandez v. City of LaFayette*, 643 F.2d 1188 (5th Cir.1981). Municipal mayors have also been held absolutely immune from damage claims under § 1983 when acting in a legislative capacity. *Aitchison v. Raffiani*, 708 F.2d 96 (3rd Cir.1983).

In this case, we find that there is no question of fact but that the deprivation, the termination of Plaintiffs' jobs as policemen, occurred as a result of the deliberations and vote by the Mayor and Town Commissioners to contract out their police services to the Broward County Sheriff's Office. The record in this cause contains allegations that the Mayor and the individual Commissioners made anti-union statements to various policemen and other residents of the Town. Nevertheless, we find

that to use these allegations to penetrate the shield of absolute immunity would create a deterrent to the fact-finding and decision-making duty of local legislators. Whatever the discussion with Town residents, whether privately or at workshop-type meetings on the subject, the result was the vote on how to provide police services for the Town. We find that under the facts alleged, the Mayor and the Commissioners were acting in a legislative capacity and are thus immune from § 1983 personal liability. The cause of action against them will be dismissed.

III. *Motion for Summary Judgment on Liability.*

■ At this point, we are left with the Plaintiffs' cause of action against the Town. A § 1983 cause of action can be properly asserted against a local municipality. *Kentucky v. Graham,* — U.S. —, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, punitive damages are not available under § 1983 from a municipality. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), *Kentucky v. Graham,* supra.

■ The plaintiffs have moved this Court to enter summary judgment on liability against the defendants. The basis for this motion is that the Town of Pembroke Park had the opportunity to litigate before PERC the factual issues giving rise to the plaintiffs' claim. Furthermore, when the defendants chose not to avail themselves of that opportunity and PERC rendered a decision against them, the Town had the additional opportunity of judicial review. The plaintiffs argue that under the Supreme Court's decision of *Migra v. Warren City School District*, 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State where the judgment was rendered. Further, plaintiffs contend that judicial affirmance of an administrative determination is entitled to preclusive effect. *Kremer v. Chem-*

*ical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982).

The defendants oppose the motion by saying that the factual determinations set forth in the PERC Order of March 12, 1981 are in effect a default judgment resulting from the Town of Pembroke Park's failure to file timely an Answer to the unfair labor practice charge brought by the FOP, and thus, the issues were not fully and fairly litigated. Therefore, defendants argue, a default judgment has no collateral estoppel effect. Further, the Town did not present its defense of whether it would have eliminated its police department in any event for reasons which do not implicate plaintiffs' constitutional rights. *Mt. Healthy Board of Education v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

The PERC Order of March 12, 1981 is styled *Florida State Lodge, Fraternal Order of Police v. Town of Pembroke Park.* The relief awarded in that Order was attorneys fees and costs for the FOP and reinstatement of the "bargaining unit employees whose employment was terminated as a result of the implementation of the aforesaid agreement...." [contract with Broward County Sheriff's Office]. The effect of this Order is that the plaintiffs in our case won an award of reinstatement. The PERC Order of November 29, 1983 is styled the same way, and pursuant to it, the plaintiffs in our case received:

| | |
|---|---|
| John K. Healy | — backpay of $8,302.90 plus interest at 12% per annum from July 22, 1982 until payment is made. |
| Stanley L. Frost | — backpay of $21,783.05 plus interest at 12% per annum from January 5, 1982 until payment is made. |
| Joseph M. Brown | — $18,796.38 plus 12% per annum from January 5, 1982 until payment is made. |
| Jesse Politi | — $21,822.33 plus 12% from March 19, 1982 until payment is made. |

Our point is that even though the FOP is the plaintiff styled in the PERC orders, the claims were brought on behalf of and for the benefit of our named plaintiffs. The defendant, of course, is the defendant remaining here. Further, the Fourth District Court of Appeals of Florida affirmed the Circuit Court in and for Broward County which had entered an Order on November 12, 1982 which enforced the original PERC Order on liability. The Town appealed this decision to the Florida Supreme Court, which declined to accept jurisdiction. Florida law disallows relitigation of issues disposed of by default. *Masciarelli v. Maco Supply Corp.*, 224 So.2d 329 (Fla.1969). Moreover, we hold that under *Migra*, supra and *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982) we must give preclusive effect to a judicial affirmance of an administrative agency's determination. Therefore, we will grant the Motion for Partial Summary Judgment on Liability.

### IV. *Motion for Summary Judgment on Damages by the Defendant.*

In contrast, the plaintiffs' PERC judgment on backpay is still pending before the Fourth District Court of Appeals of Florida. Thus, we do not have judicial review of an administrative agency determination. This issue, left open by the *Kremer* case, supra, has spawned diverging District Court opinions.

First off, we recognize that there is no requirement that a plaintiff exhaust his administrative remedies before coming to federal court on a § 1983 claim. *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, where a plaintiff has chosen his judicial form, has been well treated there by way of adequate presentation of his claims, and has been compensated for his harm with reinstatement and backpay, we are reluctant to give such plaintiff two bites at the apple.

In *Kremer v. Chemical Construction Corp.*, 456 U.S. 463, 102 S.Ct. 1888, the Supreme Court held that the state court's affirmance of the agency's determination precluded the plaintiffs' subsequent Title

VII action in federal court. After *Kremer*, the Seventh Circuit held that where the Illinois Human Rights Commission acted in a judicial capacity, observing thorough procedural evidentiary safeguards in reviewing plaintiff's claim of race discrimination, then, the principle of administrative res judicata barred his federal court suit alleging race discrimination in violation of Title VII. *Buckhalter v. Pepsi-Cola General Bottlers*, 768 F.2d 842 (7th Cir.1985). This decision has been criticized as contrary to the *Kremer* holding. *Jones v. Progress Lighting Corporation*, 595 F.Supp. 1031 (E.D.Pa.1984) (criticizing the District Court opinion which was affirmed by the Seventh Circuit). In *Reedy v. State of Fla. Dept. of Education*, 605 F.Supp. 172 (N.D.Fla.1985) our friend, Judge Stafford, wrote, "This court too declines to follow *Buckhalter*. The *Buckhalter* court's interpretation of *Kremer*—that it applies to unreviewed administrative agency's decisions rendered in a judicial capacity—is unconvincing in light of the debate between the majority and the dissent on the prudence of foregoing state court review. *Reedy*, at 173. Judge Stafford held that an unappealed decision by the Florida Commission on Human Relations in favor of the employer did not bar, under the doctrine of res judicata or collateral estoppel, the employee's Title VII action in federal court.

In our case, we have an administrative decision in two parts. The first part, rendered on the liability of the defendant Town, has been affirmed in the Florida courts. We are treating that judgment as administrative *res judicata*. The second part on damages is currently on appeal. If the Fourth District Court of Appeals had ruled on it yesterday, we would give preclusive effect to that determination. Today, we are on the eve of trial. Accordingly, we hold, that under these protracted circumstances only, where the parties have litigated liability and appealed to the state court and the parties have litigated damages in a seven day evidentiary hearing and that decision is currently on appeal in the state courts, these plaintiffs have had their constitutionally adequate day in Court

on the liability and damages issues raised by the facts in this case.

Our plaintiffs have won at every stage of the administrative and state court review process. The *Buckhalter* court, in confining its holding, pointed out that where a plaintiff prevails before an administrative agency, he is not barred from bringing a proceeding in federal court for supplemental relief. *Buckhalter*, 768 F.2d at 854, citing, *New York Gas Light Club Inc. v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980). The *Carey* case involved a claim by the plaintiff in federal court to collect attorney's fees for proceedings in a discriminatory employment complaint at the state administrative level. The *Carey* Court stated that Title VII provides a supplemental right to sue in federal court if satisfactory relief is not obtained in state forums. *Carey*, 100 S.Ct. at 2033. "One aspect of complete relief is an award of attorney's fees, which Congress considered necessary for fulfillment of federal goals.... For example, if state proceedings result in an injunction in favor of the complainant, but no award for backpay because state law does not authorize it, the complainant may proceed in federal court to 'supplement' the state remedy." *Carey*, 100 S.Ct. at 2033.

The plaintiffs in this case have received reinstatement and backpay as set out earlier in this Order. The complaint asks for further relief by stating that "Plaintiffs have suffered damages including mental distress, humiliation, embarassment, injury to reputations, public ridicule.... expenses of finding alternative employment." The complaint asks for attorneys' fees. Plaintiffs' damages have been reasonably determined elsewhere in the form of compensatory backpay awarded by PERC after seven days of evidentiary hearings. Only an appellate review of this determination remains.

▮ As for attorneys' fees, we rely on the case of *Webb v. Board of Education of*

*Dyer County,* 471 U.S. 230, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). In that case, the petitioner brought a § 1983 action challenging the termination of his employment as a public school teacher. He argued that he should receive attorney's fees for the time spent in the state administrative proceedings prior to the filing of a federal civil rights action. The *Webb* Court denied such fees. We find that § 1988 only allows fees for federal prosecution, except of course, where the legislation involved mandates resort to state procedures as outlined by the *Carey* case, *supra.* Although the plaintiffs have been successful here on some issues, they have not prevailed in terms of a monetary award. We determine that plaintiffs are not entitled to attorneys' fees in this action. We hold that where these plaintiffs have received reinstatement and compensatory damages in the form of backpay, the parties are best served by a rejection of any further litigation to secure additional damages in that substantial damages have been previously sought and determined by due process within the state system.

It is, therefore,

ORDERED and ADJUDGED that

1. the Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

2. the Consolidated Plaintiffs' Motion for Partial Summary Judgment on Liability is granted.

3. the Defendants' Motion for Summary Judgment on Damages is granted. Further, the prayer for additional damages in this forum is hereby precluded.

4. the Defendants', YOURMAN, LINET, LOFLAND, CROCCO and WEEKLEY, Motion to Dismiss on Grounds of Absolute Legislative Immunity is granted.

5. the Defendants' Motion to Bifurcate is moot.

6. Judgment be entered for the Defendants and against the Plaintiffs.