**Edna JOHNSON, Plaintiff-Appellant,**

v.

**UNIVERSITY OF
WISCONSIN–MILWAUKEE,
Defendant-Appellee.**

No. 85–1358.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 28, 1985.

Decided Jan. 29, 1986.

Rehearing and Rehearing En Banc
Denied March 4, 1986.

Michael T. Sheedy, Techmeier, Sheedy &
Associates, Milwaukee, Wis., for plaintiff-
appellant.

John R. Sweeney, Wisconsin Dept. of Justice, Madison, Wis., for defendant-appellee.

Before CUMMINGS, Chief Judge, BAUER, Circuit Judge, and CAMPBELL, Senior District Judge.[1]

CUMMINGS, Chief Judge.

This case involves an age discrimination suit brought by plaintiff Edna Johnson ("plaintiff"), pursuant to the provisions of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 *et seq.* ("ADEA"), against the defendant University of Wisconsin-Milwaukee ("defendant"). Plaintiff appeals from the district court's order denying plaintiff's motion for judgment notwithstanding the verdict ("JNOV") or for a new trial. For the reasons set out below, we affirm.

## I

Plaintiff was born April 17, 1922, and was hired by defendant November 11, 1965. She initially worked for defendant as a secretary for several years. Around 1973 or 1974, she began to work in defendant's Fringe Benefits Office, and in 1978 became a retirement counselor. She was working as a payroll and benefit staff counselor when she was terminated on September 17, 1981.

Plaintiff contested her termination through the arbitration procedure afforded by her state employment contract. Not surprisingly, plaintiff and defendant disagreed as to the reasons for her termination. Defendant contended that plaintiff was terminated because she was unable to complete routine work assignments, attempted to avoid work, and performed work incorrectly. Plaintiff argued that her discharge was in retaliation for the legal action taken by her son, who was terminated by the University in September 1980, against certain University officials. The arbitrator found that plaintiff was not terminated be-

cause of age or handicap discrimination, retaliation against her son's legal actions against certain University officials, or nepotism. The arbitrator further decided that plaintiff was not discharged for just cause, but ruled that there was just cause for a ten-week suspension without pay, and ordered that she be reinstated with back pay less pay for the ten-week suspension and less earnings from other employment during the period since her discharge.

Plaintiff also applied for unemployment compensation benefits after her termination. The matter proceeded to a contested hearing before the Appeal Tribunal of the State of Wisconsin Department of Industry, Labor and Human Relations, which ruled that plaintiff was not terminated for "misconduct" within the meaning of Wis. Stat. § 108.04(5) (1974), and hence was entitled to unemployment compensation benefits. As part of his findings, the hearing examiner stated that although there is some evidence that plaintiff committed errors and failed to perform certain aspects of her job, plaintiff "for the last several months of her employment ... had been beset by her immediate supervisors with a concerted program of formal disciplinary proceedings, a substantial amount of which was specious or contrived." Plaintiff's App. at 113. The hearing examiner did not state the motivation for this concerted program of specious disciplinary hearings.

Plaintiff subsequently brought this age discrimination suit in federal district court. Plaintiff moved for partial summary judgment, arguing that the decisions of both the arbitrator and the Wisconsin appeal tribunal should preclude defendant from raising the defense that plaintiff was terminated as the result of a legitimate business decision. The court denied plaintiff's motion. During the jury trial that ensued, plaintiff attempted through various means to introduce evidence that plaintiff was discharged in retaliation for her son's legal action. However, the court refused to ad-

---

**1.** The Honorable William J. Campbell, Senior District Judge of the Northern District of Illi-

nois, is sitting by designation.

mit the appeal tribunal's decision into evidence, and rejected as irrelevant the testimony of plaintiff and another witness that defendant terminated plaintiff in retaliation for her son's legal action. The court did admit the arbitrator's decision and award into evidence, and allowed the parties to stipulate that plaintiff had to sue in order to collect unemployment compensation benefits. The jury found that plaintiff's age was not a determining factor in her termination. The court denied plaintiff's motion for JNOV or for a new trial. At no time did plaintiff move for a directed verdict.

## II

At the outset, we must untangle several procedural knots created by plaintiff before we can reach the merits of this case. Plaintiff's post-trial motion before the district court was a dual one: a motion for JNOV and a motion for a new trial. Such a dual motion is permitted by Fed.R.Civ.P. 50(b). However, both parts of this dual motion are flawed.

■ Plaintiff's appeal from the district court's denial of her motion for JNOV is fatally flawed, and we lack jurisdiction to review it. That is because plaintiff never moved for a directed verdict at the close of all the evidence, as required by Fed.R. Civ.P. 50(b). Although we have on occasion excused the lack of a formal motion for a directed verdict at the close of all the evidence where the moving party did move for a directed verdict earlier in the trial and the opposite party was not prejudiced by the moving party's failure to renew the motion, plaintiff's failure to make a motion for directed verdict at any point in the trial cannot be excused. *McKinnon v. City of Berwyn,* 750 F.2d 1383, 1388–1390 (7th Cir.

1984); *see also* 5A *Moore's Federal Practice* ¶¶ 50.08, 50.12 (1985). The purpose of this requirement is to give "the opposing party a chance to repair ... the deficiencies in his proof before it is too late," and nothing done by plaintiff alerted defendant to this possible need. *McKinnon,* 750 F.2d at 1388, 1389.

■ Plaintiff's appeal from the district court's denial of her motion for a new trial is also flawed, though not fatally so. This flaw lies not with the original motion but rather with the appeal. Plaintiff appeals from an order denying her motion for a new trial, but the generally accepted rule is that the appeal should be taken from the judgment itself rather than the order denying the motion for a new trial. *Hennessy v. Schmidt,* 583 F.2d 302, 305–306 (7th Cir.1978); *see also* 6A *Moore's Federal Practice* ¶ 59.15[1] at p. 59–308 (1985). However, the general practice, which we have previously approved, is to treat this error as harmless and view the appeal as instead taken from the judgment, so long as (1) the judgment from which the moving party intended to appeal is final; (2) it is clear what judgment is involved; (3) the motion and appeal were timely made; and (4) there is no prejudice to the other party. *Hennessy,* 583 F.2d at 306; *see also Moore's* ¶ 59.15[1] at pp. 59–309—59–311. In this case, all of these requirements are met, and consequently we treat this appeal as an appeal from the judgment and reach the merits of the case.[2]

## III

■ The first issue raised on appeal is whether the determinations of the arbitrator or the Wisconsin appeal tribunal should have been given preclusive effect. We deal

---

**2.** The judgment was entered on January 10, 1985. Plaintiff then had ten days in which to file his motion for a new trial. Fed.R.Civ.P. 59(b). For purposes of computing time when the period is seven days or longer, the last day of the relevant period (in our case January 20, 1985) is excluded if it is a Saturday, Sunday, or legal holiday (January 20, 1985, was a Sunday), Fed.R.Civ.P. 6(a). Since plaintiff filed this motion on January 21, 1985, it was timely.

The time for an appeal after a motion for a new trial runs from the entry of the order denying such motion, Fed.R.App.P. 4(a)(4), which in our case was January 30, 1985. Since a party has thirty days in which to file the notice of appeal in a civil case, Fed.R.App.P. 4(a)(1), and plaintiff filed her notice of appeal on February 28, 1985, plaintiff's appeal was also timely.

with the preclusive effect of these two prior determinations separately.

The general rule is that a prior arbitration should not, and indeed must not, be given preclusive effect in a subsequent Title VII suit, *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 59–60, 94 S.Ct. 1011, 1025, 39 L.Ed.2d 147, or a Section 1983 suit, *McDonald v. City of West Branch*, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302. Several courts of appeals have applied this rule to age discrimination suits. See, *e.g.*, *Air Line Pilots Association v. Trans World Airlines*, 713 F.2d 940, 955 (2d Cir. 1983), affirmed in part and reversed in part, —— U.S. ——, 105 S.Ct. 613, 83 L.Ed.2d 523 (denial of contractual grievance has no preclusive effect); *Criswell v. Western Airlines*, 709 F.2d 544, 548 (9th Cir.1983), affirmed, —— U.S. ——, 105 S.Ct. 2743, 86 L.Ed.2d 321 (contractual rights arising out of collective bargaining agreement have no preclusive effect). Although both *Alexander* and *McDonald* involved the attempted use by the defendant of a prior arbitration against the plaintiff, the same policy reasons for not giving the arbitration preclusive effect apply when the plaintiff attempts to use a prior arbitration against the defendant. In either context, arbitral fact-finding is not equivalent to judicial fact-finding, the arbitrator's expertise is "the law of the shop, not the law of the land," and the arbitrator's authority derives solely from contract so that he has no general authority to invoke public laws that conflict with the collective bargaining agreement. *Alexander*, 415 U.S. at 56–57, 94 S.Ct. at 1023–1024; *see also McDonald*, 104 S.Ct. at 1803–1804.

■ By contrast, state administrative decisions have been given preclusive effect in subsequent federal trials. *United States v. Utah Construction Co.*, 384 U.S. 394, 421–422, 86 S.Ct. 1545, 1559–1560, 16 L.Ed.2d 642. For this doctrine of administrative *res judicata* to apply, the state agency must have acted in a judicial capacity, and the parties must have had a full and fair opportunity to litigate their case. *Id.; see also Buckhalter v. Pepsi-Cola General*

*Bottlers, Inc.*, 768 F.2d 842, 849 (7th Cir. 1985). Moreover, we have previously applied this doctrine in an employment discrimination case. *Buckhalter* (Title VII suit). But even assuming, *arguendo*, that these two prerequisites are met, the general rules of *res judicata* must also be satisfied, and one of those rules is an identity of the cause of action in both the earlier state administrative decision and the later federal suit. *Buckhalter*, 768 F.2d at 852; *Lee v. City of Peoria*, 685 F.2d 196, 199 (7th Cir.1982).

The issue decided by the Wisconsin appeal tribunal and the issue in this age discrimination suit are not identical. The issue in the case at bar is whether defendant had a legitimate business reason for terminating the plaintiff. The issue before the examiner of the Wisconsin appeal tribunal and decided by him was whether the plaintiff was discharged for misconduct connected with her employment within the meaning of Wis.Stat. § 108.04(5) (1974). As defined by the seminal case of *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941) and subsequently cited to numerous times by the Wisconsin state courts, misconduct

> "is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed 'misconduct' within the meaning of the statute."

*Fitzgerald v. Globe-Union, Inc.*, 35 Wis.2d 332, 151 N.W.2d 136, 139–140 (1967), quot-

ing *Boynton Cab Co.*, 296 N.W. at 640. By contrast, "mere inefficiency, unsatisfactory conduct, [or] failure in good performance as the result of inability or incapacity" may well constitute a legitimate reason for an employer to fire an employee. See, *e.g.*, *Selsor v. Callaghan & Co.*, 609 F.Supp. 1003, 1008 (N.D.Ill.1985) (employer's dissatisfaction with employee's work and a personality conflict between them both constitute legitimate nondiscriminatory reasons for employee's discharge); *Sorosky v. Burroughs Corp.*, 37 Fair Empl. Prac. Cas. (BNA) 1510, 1519 (C.D.Cal.1985) (failure to give employee a transfer offer because of his job function and its non-critical nature is a legitimate nondiscriminatory reason). The general principles of *res judicata* thus do not apply to our case. Therefore, neither the arbitrator's determination nor the Wisconsin appeal tribunal's decision precludes defendant from proffering a legitimate, nondiscriminatory reason for terminating plaintiff.

█ The second issue on appeal is whether evidence of defendant's retaliatory motive against plaintiff for plaintiff's son's legal action against various officials of the University was wrongfully excluded as irrelevant to the issue of whether defendant's proffered reason for terminating plaintiff was pretextual. To answer this question, the various methods of proof in an age discrimination suit must be reviewed.

In an age discrimination suit, the employee-plaintiff has two methods in which he may prove his case against the employer-defendant. He may use the direct method of proof and present direct or circumstantial evidence that age was a determining factor in his discharge. *LaMontagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1409 (7th Cir.1984). Alternatively, he may use the indirect method of proof as set out by the Supreme Court in *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207, and *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. The indirect method is by far the more common method of proof,

*LaMontagne*, 750 F.2d at 1409, and the circuits have agreed that this indirect method, while originally formulated for Title VII cases, nevertheless applies equally well to age discrimination cases under the ADEA. *E.g.*, *LaMontagne*, 750 F.2d at 1409 n. 1. This indirect method features shifting burdens of production. The employee must first prove a prima facie case of discrimination, which he does by showing that: (1) he was in the protected class, (2) he was doing his job well enough to meet his employer's legitimate expectations, (3) in spite of his performance he was discharged, and (4) the employer sought a replacement for him. If the employee is successful, this creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's discharge. If the employer is successful, the presumption dissolves, and the burden shifts back to the employee to show that the employer's proffered reasons are a pretext. The employee may show this in one of two ways: (1) that the employer was more likely motivated by a discriminatory reason, or (2) that the employer's proffered reason is unworthy of credence. *LaMontagne*, 750 F.2d at 1409; *Burdine*, 450 U.S. at 253–256, 101 S.Ct. at 1093–1095. The burden of persuasion remains with the employee at all times. *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093; *LaMontagne*, 750 F.2d at 1409. Moreover, the employee may anticipate the employer's justification and introduce evidence of pretext in his case-in-chief, *Morris v. Washington Metropolitan Area Transit Authority*, 702 F.2d 1037, 1049 (D.C.Cir.1983) (Title VII suit); *Worthy v. United States Steel Corp.*, 616 F.2d 698, 701 (3d Cir.1980) (age discrimination suit), as plaintiff did in the case at bar.

Against this background, the issue raised by plaintiff is as follows: when defendant offers a legitimate, nondiscriminatory reason for defendant's discharge or her (that plaintiff was not doing her work correctly), is evidence that defendant's true reason for terminating plaintiff was different and less

honorable but still nondiscriminatory (evidence that defendant terminated plaintiff in retaliation for her son's legal action against various University officials) relevant? We conclude that such evidence is not relevant. It must be noted that when the burden of production shifts back to plaintiff under the indirect method of proof, plaintiff must show that defendant's proffered reason is not just a pretext, but a pretext for discrimination. It is one matter if plaintiff shows such pretext by showing that defendant's proffered reason is unworthy of credence; such a showing is fully consistent with the conclusion that defendant has discriminated against plaintiff. It is an entirely different matter if plaintiff demonstrates pretext by showing that defendant's true reason was another nondiscriminatory reason; this does not show that defendant's proffered reason was a pretext for discrimination, and is not consistent with the conclusion that defendant discriminated against plaintiff. As support for our conclusion, suppose defendant stole plaintiff's argument and stated that the true reason defendant terminated plaintiff was because plaintiff's son was a troublemaker, rather than waiting for plaintiff to argue that this was the true reason for her termination. While defendant would not be deserving of praise, this "bad" reason proffered by defendant would still constitute a nondiscriminatory reason that satisfies defendant's burden under the indirect method of proof in an age discrimination case. Given this result, in our case where defendant proffers a "good" but allegedly false nondiscriminatory reason, plaintiff cannot show that defendant's proffered reason is a pretext for discrimination by showing that the true reason was a "bad" but also nondiscriminatory reason.

The case of *Douglas v. Anderson,* 656 F.2d 528 (9th Cir.1981), provides support for this result. In that age discrimination suit, the defendant showed that the plaintiff was terminated because of the plaintiff's financial mismanagement of the defendant's bookstore. The plaintiff argued that the real reason for his discharge was his criticism of certain financial transactions conducted by the defendant which the plaintiff discovered. The court concluded that this does not show that defendant's proffered reason is a pretext for discrimination, "but merely presents an alternate reason not based on age." *Douglas,* 656 F.2d at 534. As the Ninth Circuit aptly summarized, "[t]he reason for a business decision need not meet the unqualified approval of the judge or jury, so long as it is not based on age." *Id.* The same can be said for the case at bar.

For the above-stated reasons, we affirm the judgment in favor of defendant.